UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHARLES D'ARY,              )
                            )
        Movant,             )
                            )
    vs.                     )    No.    4:07CV2042-SNL
                            )
UNITED STATES OF AMERICA,   )
                            )
        Respondent.         )

## MEMORANDUM OPINION

Movant's motion under 28 U.S.C. § 2255 to Vacate, Set Aside or to Correct Sentence by a Person in Federal Custody is before the Court. The Government has responded in opposition.

## Background

A jury convicted Movant and three co-defendants of numerous charges related to a series of building fires. On July 29, 2005 this Court sentenced Movant to 80 months imprisonment. The sentence imposed on Movant and the three co-defendants was affirmed on appeal. U.S. v. Ihmoud, 454 F.3d 887 (8th Cir. 2006).

In his motion, Movant asserts 10 areas in which he believes there was prosecutorial misconduct or ineffective assistance of counsel.

## Standard of Review

To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. See also Coleman v. U.S., 2005 WL 3021104 (E.D. Mo. 2005).

The standard has been defined by the United States Court of Appeals for the Eighth Circuit as

follows:

> "An ineffective assistance claim generally requires two showings. 'First, the defendant must show that counsel's performance was deficient.' Strickland, 466 U.S. at 687, 104 S.Ct. 2052. This entails 'showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id. Second, the defendant must show prejudice. Id. To show prejudice, he or she must prove that 'counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable.' Id. *accord* Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (admonishing that the prejudice prong encompasses more than mere outcome determination; rather, the focus of the question of prejudice is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.)."

Covey v. United States, 377 F.3d 903, 906 (8th Cir. 2004). A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). Ordinarily, if the defendant cannot prove prejudice, it is not necessary to address whether counsel's performance was deficient. United States v. Apfel, 97 F.2d 1074, 1076 (8th Cir. 1996); DeRoo, at 925.

Failure to raise an issue on direct appeal ordinarily constitutes a procedural default and precludes a defendant's ability to raise that issue for the first time in a § 2255 motion. DeJan v. United States, 208 F.3d 682, 685 (8th Cir. 2000); Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997), cert. denied, 522 U.S. 1064, 118 S.Ct. 730, 139 L.Ed.2d 668 (1998). United States v. Villalobos, 2004 WL 2202666 (N.D. Ia.), United States v. Trotter, 2002 WL 827416 (D.Neb.), United States v. Knakmuhs, 2000 WL 34031866 (N.D. Ia.), See also Coleman v. U.S., 2005 WL 3021104 (E.D. Mo. 2005). A defendant may surmount this procedural default only if the defendant "can show both (1) cause that excuses the default and (2) actual prejudice from the errors asserted." Matthews, 114 F.3d at 113.

### Ground One
"Ineffective assistance of counsel before trial, during trial, after trial and in direct appeal."

A.  Movant asserts that his counsel was retained in violation of the Missouri Rules of Professional Conduct. Rule 4-1.8(f).

Movant avers that his trial attorney, (A.C) was hired by a third party unknown to him and that he

2

did not consent to this representation. Attached to the government's response to the motion are two affidavits from A.C. The first is dated January 21, 2008 and the second February 28, 2008.

In the February affidavit, A.C. states "Mr. D'Ary was aware of who was paying my attorney fees before and during my representation of him. He agreed to the payment arrangements at all times to the best of my knowledge."

This point should be ruled against Movant. First, the Court will give substantial credence to A.C.'s affidavit. He is an attorney, licensed to practice in the State of Missouri and before this Court. He represented Movant throughout the entire trial and at no time did Movant or A.C. indicate there was any displeasure in view of the representation. Accordingly, there can be no violation of the Missouri Rules of Professional Conduct.

Second, this issue is probably not an appropriate subject for a § 2255 motion. This has nothing to do with the prosecutorial misconduct or ineffective assistance of counsel.

Third, Movant cannot now raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not. See DeJan v. U.S., supra and Coleman v. U.S., 2005 WL 3021104, citing Anderson v. U.S., 25 F.3d 704, 706 (8th Cir. 1994). This issue was not raised on appeal, U.S. v. Ihmoud, supra.

**Ground Two**

Next, Movant asserts that A.C. failed to investigate two alibi witnesses vital to Movant's defense and failed to investigate two eyewitnesses. Movant states that on the night of the August 2002 fire, he was with "Mr. Glenn" who owns a shoe-shine shop at the mall where the fire began. In addition, Movant states that John Ihmoud was aware that Movant was with Mr. Glenn at the time of the fire, and could furnish an alibi.

In A.C.'s January affidavit, he states that "I did not investigate or call any alibi witnesses because I was never told they existed, who they were or what they might have to offer." Here again, the Court must

weigh the reasonableness of the assertion of Movant as opposed to that of his counsel. Every lawyer is quite aware as are lay persons, for that matter, that alibi witnesses could be of value in a defense. It is illogical to believe that Movant gave names to A.C. and that he simply ignored the suggestions. Such witnesses could have even been of value to the cases of the other three defendants and yet, they did not believe it helpful to investigate any testimony of those persons as well.

In any event, Movant has failed to show prejudice. He states that Mr. Glenn would have testified that at the time the fire began, he and Movant were together in the hallway of the mall. This is somewhat incredulous as there was no specific testimony adduced as to when the fire began and the location of the various parties. Various videos showed movant and others moving about the building. It is incumbent upon Movant to show that the jury would have decided differently had those two witnesses been called to testify. Accordingly, Movant has not met his burden as to this point. See Palmer v. Clarke, 408 F.3d 423, 444, 445 (8th Cir. 2005).

## Ground Three

In a similar vein, Movant asserts that A.C. failed to investigate two eyewitnesses. Movant asserts that video surveillance shown to the jury in the prosecution's case-in-chief, showed "that two employees were in the same vicinity as Petitioner (Movant)." Here, again, Movant does not identify the employees or who they were employed by nor is there any showing as to how they would have aided Movant's defense.

In A.C.'s January affidavit, he states "I did not investigate or interview any other employees at the arson site because defendant never identified anyone who might have useful information other than general character witnesses who were prepared to testify that defendant was a well-liked, nice guy, which I felt lacked probative value as to the criminal charges."

Again, Movant's assertion is suspect. As stated there were four defendants in this case, including Movant. All attorneys apparently were diligent in looking for alibi witnesses as well as eye witnesses to the various fires involved. Given the possibility that eye witnesses referred to by Movant conceivably could have

been of assistance to him in preparing his defense, they could also have conceivably been helpful to the defense of the other defendants; yet, apparently, these persons were not identified by any defendant or counsel. This causes the Court to give less credence to Movant's statements than to those of his counsel.

Still, again, Movant has not demonstrated with any degree of particularity that he was prejudiced by this alleged failure if, in fact, it existed, and that the outcome of the case would have been different. Movant's reliance on Anderson v. Johnson, 338 F.3d 382 (5th Cir. 2003) is not sufficient to prove that the performance of his counsel here was deficient. In Anderson, the name of a witness was made available by the government to defendant, and counsel elected not to interview that person. It became obvious right before trial that the government would not call the witness, giving an obvious indication that the witness would not be favorable to the government's case. Accordingly, in Anderson, the Court found that counsel was deficient in failing properly to investigate and interview the prospective witness.

Here, the situation is different. There was no *Brady* material given to A.C., indicating the government's knowledge of witnesses to the fires, and A.C. indicated that Movant did not provide him names of eye witnesses in any event. Certainly, such alleged eye witnesses would have been known to the other defendants, and their counsel, as well but no one made further investigation, if, in fact, those witnesses were identifiable and available. Again, Movant has not shown prejudice.

**Ground Four**

Next, Movant asserts that A.C. unreasonably failed to present any affirmative defense on behalf of Movant. Movant fails to state what affirmative defense might have been available that A.C. did not present nor does he suggest that he discussed with A.C. any particular defense that was not presented. Without further specificity, this point should be ruled against Movant.

In addition, Movant states that his counsel inadequately cross-examined the witnesses of the prosecution. Eight instances are cited in which Movant believes his attorney's professional judgment was unreasonable. The first is that A.C. failed to cross-examine the government's witness, Huddleston, about

5

an incident which may have incriminated Huddleston. The Court's recollection of the testimony was that much of the evidence did incriminate Huddleston and it is difficult to see how this alleged failure would have helped Movant.

Second, Movant states that A.C. should have questioned arson investigators as to the contents of two red cans, as it was assumed that the cans contained gasoline. Movant does not state how this cross-examination could have aided his defense.

Third, it is alleged that A.C. failed to question "Mr. Parker" about conflicting statements he made on the witness stand. The Court's recollection is that the cross-examination of other counsel brought out this potentially damaging character examination and it would not have been necessary for A.C. to repeat it.

Fourth, Movant states that A.C. should have questioned some witness about a fan in use at the store involved. The argument would have been that the fan was used for purposes other than to help ignite the July 10, 2003 fire. That examination would have been of little value to Movant because the fan, if it existed, could have been used for a variety of purposes, even to help ignite the fire.

Fifth, Movant alleges that A.C. should have called eye witnesses, or an electrician, to counter the testimony of the government's witness, Burt Schoulan. Schoulan's statements as to causation could, or could not have been believed by the jury. Movant cannot state with any degree of certainly that any witness who might have been called to explain or contradict the testimony of Schoulan would have been helpful to Movant.

Sixth, Movant states that A.C. failed to investigate and question fire and insurance investigators as to their failure to test outlets. Movant asserts that such testing could have provided a possible explanation to the cause of the June 8, 2003 fire. This suggestion is highly speculative, and there is no way to determine that this type of evidence could have caused the jury to find in favor of Movant.

Seventh, Movant states that A.C. should have called "Sterling Moodey" to testify for him. Moodey would have testified that he had never discussed burning his store with the petitioner. Here, again, Movant

offers no reliable information as to what Moodey would have testified to had he been called as a witness. Without knowing precisely what Moodey would have testified to, it is difficult to assess fault against A.C. for not calling that witness.

Eighth, and finally, Movant states that A.C. should have cross-examined "James Huddleston" about a meeting in May of 2003 where Huddleston claimed that Movant made incriminating statements. Movant avers that he was not present at the meeting and other witnesses could have testified that he was not present. Such witnesses were not called to Movant's detriment. Here, too, the two witnesses that Movant is concerned about were John and Nick Ihmoud. Apparently, they were related to co-defendant Ihmoud, and had those two parties been able to provide favorable evidence to Movant, certainly it would have helped Movant's co-defendants' case as well; yet, the co-defendants did not elect to call such witnesses, obviously for a legitimate reason. Accordingly, such testimony would have been of no value. In any event, in a § 2255 proceeding, the Court must presume that attorneys provide effective assistance and should not second-guess strategic decisions nor exploit the benefits of hindsight. Payne v. U.S., 78 F.3d 343, 345(8th Cir. 1996). In all of these assertions, Movant is using the benefit of hindsight which is inappropriate in this kind of proceeding. Absent some kind of extraordinary failure on the part of counsel, this Court should not decide that the strategy of Movant's counsel in representing him showed ineffective assistance. It is too speculative to assume that had counsel said this or asked that question, or examined the witness differently the result would have been different. There is simply no credible evidence to show that had A.C. conducted the cross-examination of various witnesses in a different way that the result of the case would have been different. These claims should be ruled against Movant.

**Ground Five**

Movant next asserts that his attorney failed to inform the Court that he had a medical condition that

could render him unconscious throughout the trial. This argument is unconvincing to the Court for two reasons: first, in A.C.'s February affidavit, he states "I am not now nor have I ever been aware of any health problem which would have prevented Mr. D'Ary from sitting through the trial. At the time of trial, I was aware that he was having episodic problems with his vision." The Court finds this affidavit is more convincing than the statement of Movant.

Second, this Court presided at the trial and observed all defendants including Movant and their counsel, throughout the entire trial. At no time did the Court ever observe Movant in any state of discomfort that he had "passed out." Throughout the trial, Movant appeared to be rational, was conferring with his counsel and appeared to be quite aware throughout the proceedings.

### **Ground Six**

Next, Movant alleges that A.C. failed to investigate complaints Movant made concerning police misconduct. Movant alleges that the officers threatened him on July 15, 2003 when he was questioned and harassed him during the investigation.

The Court finds that it is speculation to assume that the result of the trial would have been different assuming that Movant's assertions are accurate. For illustration, if the Court would assume that Movant's statements are correct and that counsel would have questioned those officers at the time they testified at trial, the jury could have very well disbelieved the statements of those witnesses because of their alleged treatment of Movant. Assuming this could have happened, there was, nevertheless, other overwhelming evidence to prove Movant's guilt of the charges for which he was found in violation of the law.

In addition, it is difficult for the Court to second-guess the tactics of counsel for Movant during the course of the trial and the investigation of the events leading to the trial. It is quite conceivable that counsel, for a strategic purpose, elected not to examine the witnesses with respect to the way they allegedly treated Movant. This point, too, should be ruled against Movant.

### **Ground Seven**

Movant also complains that he saw the prosecutor and a member of the jury "get on an elevator together." Movant states that the prosecutor had trial notes with him and the text of the notes were visible to the juror. He stated that he discussed this situation with his counsel, but counsel did not follow-up to determine whether or not the juror had been tainted by this exposure.

At the beginning of the trial and on several occasions during the trial, the Court thoroughly admonished the members of the jury to avoid contact with any counsel or witness involved in the case. The Court indicated that a juror could say hello or goodbye, but that would be the extent of any conversation with parties involved. Absent more specifics as to what happened as alleged by Movant, the Court is reluctant to believe that the incident, if in fact it did occur, suggested prosecutorial misconduct or tainted that particular juror. There were 11 other jurors who were able to render a verdict and did so with the blessing of the juror who may have been "tainted." It is difficult to determine therefore that this event, as alleged by Movant, could have been prejudicial in any way.

**Ground Eight**

Movant next asserts that his counsel was ineffective because he should have arranged for the government to conduct a polygraph examination of Movant. This argument, too, is unfounded for two reasons. First, a polygraph test result is not admissible as evidence so even if Movant had taken such a test and the result would have been favorable to him, that result could not have been submitted to a jury.

Second, it was obvious that counsel would have preferred not to submit Movant, his client, to a polygraph because if the result was unfavorable and even though the result would be inadmissible at trial, it would give impetus to the prosecutor to fully present its case against Movant. Very few lawyers would recommend that their clients take this chance.

**Ground Nine**

It is also suggested by Movant that as he did not sit at the same counsel table as his attorney, he was

unable adequately to confer with him during the course of the trial. The seating decision was made by all four defendants and their counsel. There were four tables with chairs around them available for the defendants and their counsel to use. The Court remembers with particularity that while A.C. did not sit immediately next to Movant, he was within a few feet of him and it was quite easy for counsel to confer at all times during the trial with Movant.

As previously stated, the Court regularly observed Movant conferring with counsel during the course of the trial. It was obvious that the seating arrangement agreed on by all of the parties and their counsel was not in any way prejudicial to Movant's rights. Certainly, counsel was not deficient in suggesting another seating arrangement.

## Ground Ten

Finally, Movant states that he was confused as to his right to testify at trial. He states that his attorney assured him there was no need for him to testify because "the Government had no case." Movant stated that he believed he could not testify unless his attorney approved of it. The Court also finds this argument meritless. It is incomprehensible for this Court to believe that Movant's counsel did not inform him that he could testify if he desired to do so, or if he did testify whether that could be of benefit to him or not.

In fact, in the jury selection process, the Court advised the initial panel that a defendant is not required to testify and that if he elects not to do so, his failure to give his version of the case involved cannot be held against him by the jury in deciding the case. Movant was present during that admonition to the jury by the Court. He had to know that he had the right to testify whether his counsel discussed it with him or not.

In addition, it is pure speculation as to whether the jury could have been influenced by his testimony if, in fact, he elected to present a defense such as alibi or a simple denial. He would have been subjected to rigorous cross-examination which could have been much more harmful to him that what he might have

testified to affirmatively on direct examination. Movant has not shown that this failure, if at all, would have changed the outcome.

In conclusion, the Court finds that Movant has failed to meet his burden to meet some credible, non-conclusory evidence that the result would have been different if, in fact, the foregoing allegations were correct. Movant has not sustained his burden to overcome the strong presumption of reasonableness of his counsel's performance. There is no convincing evidence to show that Movant's counsel's performance fell below an objective standard of reasonableness. The Court also feels that there is no showing to a reasonable probability that but for counsel's alleged unprofessional errors, the results of the proceedings would have been different. Movant's motion should therefore be denied.

Dated this ___31st___ day of July, 2008.

_____
SENIOR UNITED STATES DISTRICT JUDGE